```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | |
| | | MDL Docket No. 2004 |
| TRANSOBTURATOR SLING PRODUCTS | * | 4:08-MD-2004(CDL) |
| LIABILITY LITIGATION | * | ALL CASES |

## O R D E R

Plaintiffs seek to consolidate for trial four of the cases in this Multidistrict Litigation proceeding. For the following reasons, the Court grants Plaintiffs' Motion to Consolidate (Doc. 60) as to the four cases.[1]

## BACKGROUND

The Judicial Panel on Multidistrict Litigation has consolidated fifty-nine cases for pretrial proceedings in this Court. These cases arise from allegations that a product manufactured by Mentor Corporation ("Mentor") was defective and caused personal injuries to the various Plaintiffs. Specifically, Mentor manufactured a product known as the ObTape Transobturator Sling ("ObTape"), a surgically implanted product used to treat stress urinary incontinence in women. According to Plaintiffs, ObTape caused serious complications, including infections, abscesses, and erosion of ObTape through Plaintiffs' internal bodily tissues. Plaintiffs, who were implanted

---

[1] The Court is aware that Mentor has filed motions for summary judgment as to all Phase I Plaintiffs and that Mentor has filed motions for summary judgment as to individual Phase I Plaintiffs. Those motions will be decided when they are ripe for review, and nothing in this Order should be construed to suggest that the Court has prejudged the summary judgment motions.

with ObTape, seek damages for personal injury, and some spouses also assert loss of consortium claims.

The Court previously designated twenty-one of the Plaintiffs as Phase I Plaintiffs for pretrial discovery and pretrial proceedings ("Phase I Plaintiffs"). Twelve of the Phase I Plaintiffs originally filed their cases in the Middle District of Georgia, and, therefore, those cases can eventually be tried by this Court.[2] Plaintiffs initially sought to consolidate all twelve Middle District of Georgia cases for trial, but they have now amended their motion to seek consolidation of only four of the cases.

The four Plaintiffs whose cases Plaintiffs seek to consolidate are: Janice Crowther, Kellie Looper, Shirley Stafford, and Jeannie Tucker. Stafford was implanted with ObTape on September 28, 2004, Looper was implanted on January 10, 2005, and Crowther and Tucker were implanted on March 7, 2005. Three of the four Plaintiffs had their ObTape surgeries in the same place, performed by the same two doctors. Crowther, Stafford, and Tucker were all implanted at Athens Regional Medical Center by physicians from Athena Urology Associates; their implantation and subsequent surgeries were performed by one or both of the same two physicians, Dr. Thomas Oliver and Dr. John Blankenship. Dr. Thomas Chun was responsible for Looper's

---

[2] *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-35 (1998) (finding that 28 U.S.C. § 1407 requires the Panel to remand pending cases to their originating courts after pretrial proceedings are complete).

implantation and subsequent care, which took place at Wellstar-Kennestone Hospital in Marietta, Georgia.

Following the ObTape implantation, each of the four Plaintiffs suffered serious infections and required home health wound care treatment, and each of the Plaintiffs had multiple follow-up surgical procedures and antibiotic therapy. The four Plaintiffs claim that their infections were caused by bacteria that normally exist in the vaginal region, and they assert that these infections were caused by the construct of ObTape, which allowed vaginal bacteria to colonize in the ObTape. The four Plaintiffs plan to call a common infectious disease expert on this issue.

According to Plaintiffs, the operative warning statements made by Mentor to Plaintiffs' physicians were identical on each of the Plaintiffs' implant dates, and each doctor had a shared or similar experience regarding what Mentor told them about ObTape's potential complications and about the proper course of treatment if there were signs of erosion or infection. A significant common issue will thus be Mentor's knowledge of the risks of ObTape versus what Mentor disclosed to Plaintiffs' physicians regarding risks of ObTape and the proper curative treatment for problems associated with ObTape. Other significant common issues that the four Plaintiffs plan to address with common experts include evidence regarding the ObTape product itself—including research, development, design, testing, manufacturing, quality control, and product evaluation—as well as general evidence on anatomy, biostatistics, bioengineering, the Food

and Drug Administration's 510(k) process, and Mentor's corporate knowledge.

Mentor objects to the consolidation of these four cases for trial, contending that it will be denied its right to a fair trial if forced to defend all four cases in one trial. Mentor asserts that the claims are not sufficiently similar, that the trial will be confusing to the jury, and that the issue of punitive damages cannot be evaluated in a fair manner if the cases are consolidated. Among other things, Mentor contends that the four Plaintiffs' claims are not sufficiently similar because the four Plaintiffs have different medical histories, different surgical experiences, different follow-up care, and different manifestations of injuries allegedly caused by ObTape. Mentor asserts that a jury will not be able to keep up with the plaintiff-specific evidence for each Plaintiff. Mentor also argues that because Plaintiffs' implant dates are different, some evidence that is admissible in one Plaintiff's case regarding Mentor's knowledge of the risk of ObTape may be inadmissible or admissible for only a limited purpose in another Plaintiff's case. Mentor contends that a jury will not be able to understand how to differentiate between evidence admitted for one purpose with regard to one Plaintiff but for a different purpose with regard to another Plaintiff. Mentor further argues that the consolidated trial will enable Plaintiffs to "stack the deck" against Mentor to increase the likelihood of receiving punitive damages. Finally, Mentor contends that consolidating these four cases for a bellwether trial will serve

4

no significant purpose because Plaintiffs selected the most similar cases for consolidation, so even if they can be tried together, none of the rest of the cases can.  Thus, according to Mentor, the four Plaintiffs seeking consolidation are not representative of other Plaintiffs because other Plaintiffs will likely have their claims tried separately.

DISCUSSION

Rule 42 of the Federal Rules of Civil Procedure provides in relevant part: "If actions before the court involve a common question of law or fact, the court may . . . join for . . . trial any or all matters at issue in the actions[.]"  Fed. R. Civ. P. 42(a)(1).  "This rule is a codification of a trial court's inherent managerial power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir. 1985) (internal quotation marks omitted).  The appellate courts, specifically including the Eleventh Circuit, have "encouraged trial judges to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion."  *Id.* (alteration in original) (internal quotation marks omitted).

In exercising its discretion under Rule 42(a), the district court must determine:

> "[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial

5

> resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Id.* at 1495 (alterations in original) (quoting *Arnold v. E. Air Lines, Inc.,* 681 F. 2d 186, 193 (4th Cir. 1982)). The Court should also be cognizant that certain risks of prejudice and confusion may be minimized with cautionary jury instructions and by controlling the manner in which evidence is submitted to the jury. *Id.*

Consolidation appears to be a particularly appropriate tool that should be seriously considered in modern-day multidistrict litigation. It has already been determined that cases referred to a district court by the Judicial Panel on Multidistrict Litigation involve common questions of law and fact such that it is deemed appropriate, and preferable, that the pretrial aspect of the cases be handled in a consolidated manner. Furthermore, it has been found that conducting "bellwether trials" is often an effective way to manage multidistrict litigation to a successful conclusion.[3] For the bellwether trial concept to be an effective gauge for evaluation of other cases, it would appear that the more bellwether trials conducted, the more reliable the gauge. Since a court has limited

---

[3] Under the "bellwether trial" practice, certain cases within a multidistrict litigation proceeding are selected to proceed to trial, and the so-called bellwether trials are used to assist the parties in evaluating the other cases comprising the multidistrict litigation. The cases for the bellwether trials are selected by the judge after consultation with the parties' attorneys. The Court is restricted, however, to trying only cases over which that Court would have original jurisdiction, unless the parties otherwise consent. *Lexecon Inc.*, 523 U.S. at 34-35.

6

time and resources to try large numbers of bellwether trials, it would appear that consolidation of multiple cases for trial in the MDL setting would provide the parties with an opportunity to obtain results for multiple claims without burdening the court or the parties with the substantial cost of multiple separate trials.

The Court hastens to add that this must be done in a manner that assures all parties of a fair trial. If that cannot be accomplished, then the cost of consolidation would outweigh its benefits. In this case, however, the Court finds that consolidation of the four cases requested by Plaintiffs for trial far outweighs any negative consequences arising from a consolidated trial. The four Plaintiffs are similarly situated in terms of the manner in which they were implanted with the ObTape; they allegedly suffered similar complications and resulting medical problems; and the time frame of their surgeries and complications is similar. In addition, Plaintiffs' physicians received similar information and warnings regarding ObTape and the recommended treatment for problems with ObTape. None of Mentor's arguments persuade the Court that the four cases should not be consolidated.

First, the Court rejects Mentor's argument that there are too many individual issues such that Plaintiffs' claims are not sufficiently similar for a consolidated trial and that the jury will not be able to keep up with the plaintiff-specific evidence. The Court concludes that this issue is not insurmountable. While each of Plaintiffs' specific medical conditions may be different, those

differences and their significance can be explained to a jury and easily understood.

Second, with regard to the Mentor corporate knowledge timing issue, the Court finds that this issue should not defeat consolidation. So long as the evidence is introduced in an organized fashion, this issue is one that can be handled with appropriate jury instructions. Furthermore, should Mentor believe that the corporate knowledge timing issue warrants closer scrutiny once it receives Plaintiffs' exhibit list, Mentor may file a motion in limine to have the Court address any potential problems prior to trial.

Third, as to Mentor's "stack the deck" punitive damages argument, the fact that four cases will be tried together, instead of one, does not militate strongly against consolidation. As discussed above, the jury can and will be instructed to consider Plaintiffs' claims separately. Moreover, Mentor's argument appears to ignore the fact that even if the Court were to deny the motion for consolidation, evidence regarding similar incidents in other ObTape patients would still be potentially admissible on the issues of notice and punitive damages. *See, e.g., Mack Trucks, Inc. v. Conkle*, 263 Ga. 539, 544, 436 S.E.2d 635, 640 (1993) (noting that in product liability cases, Georgia law permits evidence of similar incidents under some circumstances on the issues of notice and punitive damages).

Finally, the Court cannot conclude based on the present record that it will be impossible to consolidate other Plaintiffs' claims for trial after the first trial is completed. Despite Mentor's gloomy, "the sky is falling" forecast regarding the usefulness of a bellwether trial involving four Plaintiffs, the Court is not convinced at this point that consolidating the trials of Janice Crowther, Kellie Looper, Shirley Stafford, and Jeannie Tucker would be an exercise in futility. Rather, the Court concludes that a consolidated bellwether trial would provide the parties with an opportunity to obtain results for multiple claims without burdening the Court or the parties with the substantial cost of multiple separate trials.

In summary, the Court finds that these four cases can be presented to a jury in a manner that is not confusing and that assures Mentor its right to a fair trial. Therefore, as the Eleventh Circuit found in *Hendrix* with regard to consolidation of the cases of four insulation industry workers against two asbestos manufacturers, 776 F.2d at 1494, 1497, the Court concludes that consolidation is appropriate here.

## CONCLUSION

Plaintiffs' Motion to Consolidate (Doc. 60) is granted. Although Plaintiffs' initial request to consolidate twelve cases may

have been a bit ambitious, the Court finds that the consolidation of four cases is just about right.[4]

IT IS SO ORDERED, this 3rd day of March, 2010.

                                                  S/Clay D. Land
                                                      CLAY D. LAND
                                   UNITED STATES DISTRICT JUDGE

---

[4] Plaintiffs, in reconsidering their initial request, apparently followed "the counsel of Talleyrand, 'Pas trop de zèle'–not too much zeal." *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 354 (2d Cir. 1993) (reversing jury verdict in trial of forty-eight asbestos claims and finding consolidation was inappropriate).