IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004 |
| | | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | |
| | | Case Nos. |
| LIABILITY LITIGATION | * | 3:07-cv-00088 (Parker *et al.*) |
| | | 3:07-cv-00101 (Stafford *et al.*) |
| | * | 3:07-cv-00102 (Booth *et al.*) |
| | | 3:07-cv-00130 (Dover *et al.*) |
| | * | 4:08-cv-05000 (Crews *et al.*) |
| | | 4:08-cv-05003 (Cree *et al.*) |
| | * | 4:08-cv-05010 (Doria *et al.*) |

O R D E R

Mentor Worldwide LLC ("Mentor") moves to disqualify Plaintiffs' proffered expert Catherine Ortuno, M.D.  Dr. Ortuno is a former employee of Mentor-Porges Corporation, a subsidiary of Mentor Corporation.  Mentor contends that during her employment, Dr. Ortuno obtained confidential and privileged information concerning Mentor's product that is the subject matter of this lawsuit, ObTape Transobturator Sling ("ObTape").[1]  Mentor argues that Dr. Ortuno should not be permitted to use confidential and privileged information to support expert opinions contrary to Mentor's interests.  For the reasons set forth below, Mentor's Motion to Disqualify Dr. Ortuno as an expert (Doc. 153) is denied.

---

[1] ObTape is a synthetic suburethral sling used to treat stress urinary incontinence.

BACKGROUND

Dr. Ortuno was employed by Porges from 1996 to 2007. From 2001 to 2006, Porges was a subsidiary of Mentor ("Mentor-Porges"). Dr. Ortuno served as Device Vigilance and Clinical Research Officer and Senior Project Manager for Women's Health Products. In that role, she was in charge of the vigilance database for Mentor-Porges products, including ObTape, and she was in charge of clinical trials. Dr. Ortuno had access to information regarding clinical trials, research and development, complaints from the field about ObTape, clinical data, and marketing and sales. Part of her job was to evaluate, investigate, and report adverse events reported to Mentor-Porges regarding ObTape. In 2005, based on their observations regarding ObTape, Dr. Ortuno and a co-worker wrote a report to Mentor-Porges documenting their concerns about the safety of ObTape. They recommended that sales of ObTape be stopped.

In 2006, the French agency for the safety of health products, Agence Française de Sécurité Sanitaire des Produits de Santé ("AFSSAPS"), met with representatives of Mentor-Porges, including Dr. Ortuno, to discuss a survey AFSSAPS conducted regarding the safety of synthetic suburethral slings such as ObTape. AFSSAPS threatened to take regulatory action with regard to ObTape. Dr. Phoebe Mounts, Mentor's outside counsel, was involved in responding to the AFSSAPS inquiry on behalf of Mentor. Dr. Mounts had discussions with Dr.

2

Ortuno about the AFSSAPS inquiry, including compliance with AFSSAPS's requests for quarterly reports regarding ObTape.

In 2007, after Porges was acquired by Coloplast, Dr. Ortuno left the company. Coloplast allowed Dr. Ortuno to keep the laptop computer she had used while employed at Coloplast and Mentor-Porges. The laptop contained a number of documents related to ObTape. Dr. Ortuno did not produce the documents to Plaintiffs' counsel, but she did generally describe the documents to counsel. Counsel then served letters of request seeking production of those documents under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, July 27, 1970, 23 U.S.T. 2555. Once this Court received the documents, copies of the documents were produced to Mentor's counsel, who reviewed the documents for privilege, filed a privilege log with the Court, and produced non-privileged documents to Plaintiffs' counsel. In response to Mentor's claim of privilege as to written communications between Dr. Ortuno and Dr. Mounts, Plaintiffs argued that those communications were merely discussions regarding business advice and were not protected by the attorney-client privilege. The Court ruled that certain emails between Dr. Mounts and Mentor-Porges employees, including Dr. Ortuno, were protected by the attorney-client privilege. *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 632 F. Supp. 2d 1370, 1381 (M.D. Ga. 2009). Mentor now seeks to prevent Dr. Ortuno

3

from providing any testimony as to those privileged communications and seeks to prevent her from providing any expert opinion testimony regarding any matters she learned about during her employment with Mentor.

For the following reasons, the Court finds that Dr. Ortuno shall not be permitted to provide testimony regarding the specific discussions she had with Mentor's counsel relating to the communications that the Court has previously found to be privileged. However, she shall be permitted to testify as to other relevant matters that she learned about during her employment with Mentor, and shall be permitted to provide expert opinion testimony that satisfies the requirements of Rule 702 of the Federal Rules of Evidence.

## DISCUSSION

The focus of Mentor's present motion is to prevent Dr. Ortuno from providing expert opinion testimony about matters that she became aware of during her employment with Mentor. Mentor does not object to the testimony pursuant to Rule 702, but instead seeks to have Dr. Ortuno disqualified under the Court's "inherent power to disqualify an expert witness." (Mentor's Mem. in Supp. of Mot. to Disqualify Catherine Ortuno from Serving as Pls.' Expert 6.) Although invitations to exercise "inherent power" have a seductive quality to them, such invitations, if accepted by the Court, have the potential to lead to arbitrary decision-making based on subjective reasons

4

rather than an objective application of the law.  Therefore, before resorting to "inherent powers," the Court finds it appropriate to start its analysis with the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

Under the Federal Rules of Evidence, an expert opinion is generally admissible unless it is not relevant, *see* Fed. R. Evid. 402, or the expert does not satisfy the requirements of Rule 702.  Here, Mentor does not contend that Dr. Ortuno's opinions are irrelevant.  Mentor also does not move to disqualify Dr. Ortuno under Rule 702.  It has produced no evidence that Dr. Ortuno is unqualified to testify competently regarding the matters she intends to address, that her methodology is not reliable, or that her testimony will not assist the trier of fact.

An expert opinion may also be excluded if it is the result of work by a witness who was employed in anticipation of litigation only *and* the witness is not expected to testify at trial. Fed. R. Civ. P. 26(b)(4)(B).  Under Rule 26(b)(4)(B), Mentor could prevent fact or opinion discovery from Dr. Ortuno if she was "retained or specially employed by [Mentor] in anticipation of litigation or to prepare for trial" and Dr. Ortuno was "not expected to be called as a witness at trial."  Here, Dr. Ortuno was not retained or specially employed by Mentor in anticipation of litigation or to prepare for trial. Rather, she obtained information from Mentor by virtue of her

5

employment as Mentor-Porges's Device Vigilance and Clinical Research Officer and Senior Project Manager for Women's Health Products. Thus, Rule 26(b)(4)(B) does not prevent Dr. Ortuno from testifying as an expert in the actions comprising this MDL.

Finally, an expert's opinion may be excluded if it is protected by a privilege. Fed. R. Evid. 501. Where, as here, state law governs the claims, the applicable state law of privilege applies. *Id.* Although the thrust of Mentor's argument appears to be that information Dr. Ortuno received while employed by Mentor should be treated as confidential and privileged from disclosure, Mentor points to no privilege under Georgia or other state law that might apply in this case except for the attorney-client privilege. The attorney-client privilege does not warrant complete exclusion of Dr. Ortuno's expert opinions. It only supports the exclusion of any privileged communications between Dr. Ortuno and Mentor's attorneys; the privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Therefore, Dr. Ortuno shall not be permitted to give any testimony that would divulge attorney-client communications between her and Mentor's attorneys, though she shall not be precluded from disclosing the underlying facts.

As to Mentor's attempt to prevent all expert opinion testimony proffered by Dr. Ortuno simply based upon her previous employment

6

relationship with Mentor, Mentor fails to point the Court to any other privilege under Georgia law that would preclude a former employee from testifying against her former employer in a product liability action.  The Georgia Court of Appeals analyzed this issue in *General Motors Corp. v. Moseley*, 213 Ga. App. 875, 447 S.E.2d 302, (1994), *abrogated on other grounds by Webster v. Boyett*, 269 Ga. 191, 196-97, 496 S.E.2d 459, 463-64 (1998).  In *Moseley*, a product liability action regarding GM pickup trucks, the plaintiffs called a former GM safety engineer as a fact witness to testify about the design of the truck's fuel tank.  *Moseley,* 213 Ga. App. at 879, 447 S.E.2d at 307.  GM sought to exclude his testimony, arguing that any knowledge he had about the fuel tank design would be privileged.  *Id.* The court concluded that the engineer's testimony was not privileged because Georgia does not recognize privilege for communications between a principal and agent and because the communications were not protected under the attorney-client privilege.  *Id.* at 879-80, 447 S.E.2d at 308.  The court noted that the engineer had worked with a defense team in other cases involving the fuel tank but concluded that the defense team's use of the engineer's expertise "did not bestow any privilege upon [his] experience and observations."  *Id.*, 447 S.E.2d at 308.  Since Mentor has pointed to no state law privilege that generally prohibits the disclosure of information that an employee learns during the employment relationship, the Court

7

finds that Rule 501 does not require the exclusion of Dr. Ortuno's testimony regarding matters beyond her communication with Mentor's attorneys. *Cf. Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1444-45 (11th Cir. 1998) (finding no blanket rule against witness's "side-switching" and noting that a party is generally only prohibited from contacting his adversary's former expert in violation of Rule 26, the attorney-client privilege, or work product privilege).

Perhaps because the Federal Rules permit Dr. Ortuno to provide expert testimony, Mentor resorts to a line of cases, mostly unreported district court cases, in which federal courts excluded expert testimony based on their "inherent power to disqualify an expert from participating in litigation." *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564, 2003 WL 23101783, at *1 (W.D.N.Y. Dec. 4, 2003); *accord, e.g., Space Sys./Loral v. Martin Marietta Corp.*, Civ. No. 95-20122 SW, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995). The Court does not find this line of cases to be persuasive under the circumstances of the present case. However, even if the Court found the rationale of these cases to be persuasive, the Court finds that even under that rationale, Dr. Ortuno's non-privileged expert testimony should not be excluded. Under this line of cases, a former employee may be disqualified as an expert against her former employer if: (1) it was objectively reasonable for the employer to

8

conclude that a confidential relationship existed between it and the former employee, and (2) the employer disclosed confidential or privileged information to the former employee that is relevant to the current litigation. *E.g., CarboMedics, Inc. v. ATS Med., Inc.*, Civil No. 06-cv-4601 (PJS/JJG), 2008 WL 5500760, at *3 (D. Minn. Apr. 16, 2008); *accord Alien Tech. Corp. v. Intermec, Inc.*, No. 3:06-CV-51, 2007 WL 4261972, at *1 (D.N.D. Nov. 30, 2007); *Brett ex rel. Brett v. Hillerich & Bradsby Co.*, No. CIV-99-981-C, 2001 WL 36162670, at *1 (W.D. Okla. Oct. 5, 2001).

The rationale for this "inherent judicial powers" rule has very little to do with the ability of the Court to manage its docket or operate in an efficient and just manner. Rather, two possible rationales appear to be offered in support of the line of cases upon which Mentor relies. First, these courts appear to establish some amorphous "judge-made" privilege based on the nature of the employment relationship even though neither Congress, nor the drafters of the Federal Rules, nor a state legislature, nor a state's common law recognizes such a privilege. The Court finds this rationale dubious and unpersuasive. A second, and perhaps more persuasive, rationale is that the courts in this line of cases are simply using their "inherent powers" to enforce a confidentiality agreement between the employer and former employee. To enforce the employer-employee agreement, the court uses its "inherent" power to

prevent the disclosure of confidential information, and thus disqualifies the employee from testifying.  The Court finds that this rationale does not support the disqualification of the expert testimony under the circumstances in this case.

Although the Court declines to follow the "inherent powers" argument suggested by Mentor, the Court finds that even if it did accept that such a legal principle existed in theory, the cases upon which that principle is based are distinguishable from the present case.  First, the courts that apply this rule generally focus upon the existence of a confidentiality agreement between the employer and employee.[2]  *E.g., Space Sys./Loral*, 1995 WL 686369, at *4 (concluding that expert in patent infringement action could not disclose to his former employer's adversary information he obtained while bound by confidentiality agreement).  In the present case, Dr. Ortuno never had a confidentiality agreement with Mentor or Mentor-Porges.  Therefore, the Court is not called upon to use its "inherent" or "equitable" powers to prevent the breach of such an agreement.

Second, these courts justify their disqualification of a former employee's testimony based upon a concern that the former employee should be prevented from potentially disclosing confidential information to an adversary of the employer who could gain an unfair

---

[2] In the vast majority (if not all) of the cases Mentor cited in support of its "inherent authority" argument, the former employee was bound by a confidentiality agreement.

10

competitive advantage. *CarboMedics, Inc.*, 2008 WL 5500760, at *3 (excluding company's former president from serving as expert for adversary in breach of contract action where former president had direct knowledge of company's position in lawsuit and former president had signed confidentiality agreement); *Alien Tech. Corp.*, 2007 WL 4261972, at *2 (disqualifying former employee from testifying in patent infringement action because he had confidentiality agreement with employer and because he had information about employer's legal planning that might inadvertently be disclosed to adversary); *see also Brett*, 2001 WL 36162670, at *2 (disqualifying former employee as expert based on unfair competitive advantage rationale). In the present case, Mentor cannot make a credible argument that Dr. Ortuno's testimony will provide some unfair advantage to a competitor. ObTape has been removed from the market, and it is doubtful that testimony by Dr. Ortuno regarding ObTape would disclose any confidential information that would place Mentor at a present competitive disadvantage. Moreover, Mentor appears to concede that Dr. Ortuno may serve as a fact witness because she has unique personal knowledge about the matters at issue in the actions comprising this MDL, including the complaints Mentor received from the field regarding ObTape. Mentor does *not* argue (or point to any authority) that Dr. Ortuno may not disclose confidential information if she serves as a *fact* witness. Interestingly, Mentor simply seeks

11

to prevent her from giving a relevant, qualified, and reliable expert opinion based upon those facts.  The Court finds no justification for excluding such testimony under the federal rules or the Court's inherent powers.

## CONCLUSION

For the reasons discussed above, Mentor's Motion to Disqualify Dr. Ortuno (Doc. 153) is denied.  Dr. Ortuno shall be permitted to serve as an expert witness for Plaintiffs; however, she shall not offer testimony that would divulge privileged, attorney-client communications.

IT IS SO ORDERED, this 1st day of April, 2010.

                                              S/Clay D. Land
                                                   CLAY D. LAND
                                        UNITED STATES DISTRICT JUDGE